IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LAURA CERVANTES and | § | |
| JASPER HIGH SCHOOL CHOIR BOOSTER CLUB, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| PLANO INDEPENDENT SCHOOL DISTRICT, | § | **Civil Action No.: 4:26-cv-561** |
| BILLIE JEAN LEE, KATIE PATEL, | § | |
| TERRENCE JENNINGS, PHILLIP MORGAN, | § | |
| JENNIFER ISENSEE, SELENDA FREEMAN, | § | |
| JASPER HS CHOIR BOOSTER CLUB, | § | |
| SOMMER LUDWIG, CAROL JENNINGS, | § | |
| SUYPENG ALEXANDRA HOH, JANE DOE, | § | |
| ELIZABETH SATZ, and | § | |
| UNIVERSAL SURETY OF AMERICA, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' ORGINAL COMPLAINT
*(including attorney's signature)*

TO THE HONORABLE COURT:

### I.      INTRODUCTION

This case arises as a result of Plano Independent School District and its employees conspiring with private citizens to assume control over a private non-profit organization, take control of its property and monies, and eventually, have the directors of that organization falsely arrested and publicly humiliated – all because the officers of a high school choir booster club would not bend the knee to an out-of-control public school district.

## II.     JURISDICTION

1. This Court has original jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343 because this suit seeks to vindicate rights under the First, Fourth, Fifth, and Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

2. This Court also has jurisdiction over this case pursuant to 28 U.S.C. §§ 2201, 2202 because this suit seeks to declare the rights of the parties and to grant all further relief found necessary and proper.

3. This court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a) because the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

## III.     VENUE

4. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391(b)(1) because Defendants are all believed to be located within the district and division in which this suit was filed and are subject to personal jurisdiction in this district.

5. Venue is also proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because this is the district in which a substantial portion of the events giving rise to this suit occurred.

## IV.     PARTIES

### Plaintiffs

6. **LAURA CERVANTES** ("Cervantes" or "Plaintiff") is a private citizen and resident of Collin County, Texas.

---

7. **JASPER HIGH SCHOOL CHOIR BOOSTER CLUB** (the "Booster Club") is a Texas non-profit corporation, organized pursuant to Chapter 22, TEX. BUS. ORGS. CODE.

**Defendants**

8. **PLANO INDEPENDENT SCHOOL DISTRICT** ("Plano ISD" or "PISD") is a political subdivision of the state of Texas, with principal offices at 2700 W. 15th Street, Plano, Texas 75075. PISD may be served pursuant to TEX. CIV. PRAC. & REM. CODE § 17.024(c) by serving: Lauren Tyra, Board President or Theresa Williams, Superintendent of Schools, at 2700 W. 15th Street, Plano, Texas 75075.

9. **BILLIE JEAN LEE** ("Lee") was the principal at Jasper High School and an employee of Plano ISD at all times relevant hereto. She may be served at: 5601 W. Parker Rd., Plano, Texas 75093 or at 2704 Meadowbrook Ct., Plano, Texas 75075.

10. **KATIE PATEL** ("Patel") is the choir director at Jasper High School and an employee of Plano ISD at all times relevant hereto. She may be served at: 8609 Lake Arrowhead Trail, McKinney, Texas 75071.

11. **TERRENCE JENNINGS** ("Jennings") is the director of choirs for grades K-12 and an employee of Plano ISD at all times relevant hereto. He may be served at: 2700 W. 15th St., Plano, Texas 75075 or at 2821 Wrangler Ln., Sachse, Texas 75048.

12. **PHILLIP MORGAN** ("Morgan") is the director of fine arts for and an employee of Plano ISD at all times relevant hereto. He may be served at: 2700 W. 15th St., Plano, Texas 75075 or at 2700 Spring Side Drive, Royse City, Texas 75189.

13. **SELENDA FREEMAN** ("Freeman") is an assistant superintendent, Level 3 hearing officer and an employee of Plano ISD at all times relevant hereto. She may be served at: 2700 W. 15th St., Plano, Texas 75075 or at 2428 Corby Dr., Plano, Texas 75025.

14. **JENNIFER ISENSEE** ("Isensee") is the Director of Internal Audit and an employee of Plano ISD at all times relevant hereto. She may be served at: <u>2700 W. 15th St., Plano, Texas 75075</u> or at <u>119 Springbrook Drive, Prosper, Texas 75078.</u>

15. **JASPER HS CHOIR BOOSTER CLUB** ("JHSCBC") is a Texas non-profit corporation. It may be served through its registered agent: <u>Jasper High School, 6800 Archgate Drive, Plano, Texas 75024</u>.

16. **SOMMER LUDWIG** ("Ludwig") is an individual, Texas resident and is also a current director of JHSCBC. She may be served at: <u>3729 Norwich Lane, Plano, Texas 75025</u> or at <u>6425 Hall of Fame Ln., Frisco, Texas 75034</u>.

17. **CAROL JENNINGS** ("Carol") is an individual, Texas resident. She may be served at: <u>4217 Emerson Drive, Plano, Texas 75093</u>.

18. **SUYPENG ALEXANDRA HOH** ("Hoh") is an individual, Texas resident. She may be served at: <u>6737 Grant Ln, Plano, Texas 75024</u>.

19. **JANE DOE** ("Doe") is any unknown person or Plano ISD employee, who participated in the events alleged in this suit, but whose identity is not yet know but is discovered during the course of this suit.

20. **ELIZABETH SATZ** ("Satz") is an individual, Texas resident. Satz is a notary public in and for the state of Texas, whose has Notary ID# 133814988. She may be served with process at: <u>10 Woodcreek Lane, Frisco, Texas 75034</u>.

21. **UNIVERSAL SURETY COMPANY** ("Universal Surety") is a licensed insurance company authorized to do business in Texas, who is the surety of Satz's bond for her notary commission pursuant to Tex. Gov't Code § 406.010(a), conditioned on Satz's faithful performance of her duties as a notary public. Pursuant to Tex. Gov't. Code §

406.010(b) and Tex. R. Civ. P. 35, Universal Surety is sued along with Satz, and should be held liable jointly and severally along with Satz, in the amount of up to $10,000, pursuant to the terms of said bond.  It may be served through its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## V.    BASIS OF SUIT

### Plaintiff and the Booster Club

22. Plaintiff is the parent of two students who were enrolled as students at Jasper High School ("Jasper") in Plano ISD students at all times relevant hereto, where they were involved in the Jasper school choir.

23. The Booster Club has operated since the 1990's, and at least since 2013 has existed as an unincorporated nonprofit association, with an IRS tax identification number, is designated as a 501(c)(3) tax-exempt organization, and maintained a bank account with Prosperity Bank (formerly Legacy Texas Bank) and Vantage Bank.

24. The Booster Club is intended to allow persons with similar interests, values, and objectives (namely, support and promotion of the choir at Jasper), to associate and come together to work for a common purpose.

25. Plaintiff was duly elected president of the Booster Club for in 2019.

26. After her election, Plaintiff, along with the governing board, determined it was best to incorporate the Booster Club. A certificate of formation was filed with the secretary of state of Texas on June 1, 2022, incorporating the Booster Club as a non-profit corporation in accordance with Tex. Bus. & Comm. Code §§ 22.051 and 22.101.

27. The Booster Club constitutes a charitable, benevolent, and/or social organization pursuant to Tex. Bus. & Comm. Code § 22.101. According to its certificate of formation

"...organized and operated for charitable and educational purposes of supporting the Jasper High School Choir."

28. Once incorporated, the Booster Club had three directors and managing members: Plaintiff, Krisinda Lingenfelter, and Maria King. Neither Plano ISD, nor any of its employees, were members (or if so, were acting as parents who happened to be unrelated Plano ISD employees), officers, or employees of the organization. Plaintiff continued to serve as its president.

29. The certificate of formation has only been amended one time, on February 25, 2025, for the purposes of correcting the misspelling of names in the original certificate.

30. The Booster Club adopted bylaws pursuant to Tex. Bus. & Comm. Code §§ 22.102.

31. Plaintiff and the Booster Club proceeded with its lawful activities, and raised money and endeavored to support the students in the Jasper choir.

32. At no time did Plano ISD or any Defendant have any legal or equitable ownership interest in the Booster Club, its property, or the money it raised.

## *Plano ISD Thinks It Controls... Everything*

33. On its website, Plano ISD espouses:

> "Although a booster club works very closely with the District, it is a separate, legal entity from the District. The booster club must be approved by the appropriate District Administrator, submit the required documentation each year, and attend their designated, annual Booster Club training. In addition, an exempt organization must abide by all Plano ISD policies and procedures, UIL regulations, and federal and Texas state laws concerning booster organizations. Booster groups who fail to comply will not be allowed to operate and will be dissolved."[1]

---

[1] *Available at:* https://www.pisd.edu/district-resources/booster-clubs.

34. Undeterred by the complete absence of authority, Plano ISD even adopted a policy relating to booster clubs: Board Policy GE.[2] As its sole basis for the "legal framework" of Board Policy GE, the District quotes Tex. Educ. Code § 26.001(e):

> "A board shall cooperate in the establishment of ongoing operations of at least one parent-teacher organization at each school in the district to promote parental involvement in school activities."

35. In 2022, Plano ISD had in place Board Policy GE, which purported to regulate the activities of booster clubs. The policy provided that:

    a) Organizations "should also strive to further the District's and each school's goals and objectives";

    b) Organizations must "function in a way that is consistent with the District's philosophy and objectives";

    c) "All parent/citizen clubs and organizations operating within the schools shall operate within this policy for local groups, subject to approval of the Superintendent.";

    d) "Failure by the organization to submit the documents to the principal and to adhere to the above requirements may result in the organization being denied permission to participate in any school activities";

    e) Organizations' "bylaws shall include provisions for disposal of funds and/or property to the District in case said organization disbands or ceases to operate"; and

    f) "Any organization operating under this policy that, in the opinion of the school administration, does not adhere to this policy and any regulation established by the school administration will cease to be recognized by the Board as a legitimate school-related club or organization and will not be eligible to use school facilities or services."

---

[2] *Available at*: https://pol.tasb.org/PolicyOnline/PolicyDetails?key=312&code=GE#legalTabContent.

36. Apparently, even though Plano ISD admits booster clubs are "separate, legal entit[ies]," it still has authority to approve them, regulate them, and even dissolve them. Where Plano ISD gets this authority, no one knows.

37. Astoundingly, in part after the events giving rise to this suit, Plano ISD adopted an ever more stringent version of Board Policy GE in 2025, which purports to impose all manner of restrictions and requirements upon parents and independent organizations. Wildly, the policy purports to vest Plano ISD (and its employees) with the vast power to:

   a. Deem any "Parent Teacher Association (PTA), the Parent Teacher Student Association (PTSA), booster clubs, and other parent organizations" as "District-affiliated school-support organizations" subject to Board Policy GE;

   b. Command "each organization should also strive to further the District's and each school's goals and objectives."

   c. Require "bylaws [to] include provisions for disposal of funds and/or property to the District in case said organization is disavowed, disbands, or ceases to operate";

   d. Require organizations to be "classified as 501(c)(3)" and "comply with IRS reporting requirements";

   e. Require organizations to "organize, fundraise or solicit donations, and function in a way that is consistent with the District's philosophy and objectives, Board policies, District administrative regulations, applicable UIL or other governing association guidelines, and financial and audit regulations"; and

   f. Exercise its "full authority to terminate a program when it no longer meets the needs of the District or because it is no longer convenient to support the program within the school"; and

   g. Declare "[a]ny gifts provided through implementation of a program through privately funded sources shall become the property of the District."

38. Also, Plano ISD now requires booster clubs and parent organizations to agree to and sign a so-called "Affidavit of Compliance & Understanding of Dissolution or

Disavowed Status,"[3] which effectively requires submission to Policy GE and all of its illegal provisions. This is also referred to as "Booster Officer Acknowledgement of Compliance & Understanding of Dissolution or Disavowed Status"[4] in the "Plano ISD Booster Club Application for District Recognition & Formation" online, digital form of which booster clubs are now required to agree.

39. Notably, Plano ISD knows it doesn't have any real authority to implement the regulations it does in Policy GE, which itself provides "[s]chool employees shall not have signature authority on any depository account, including a checking account, for a District-affiliated school-support organization." And even in Board Policy CDC,[5] "[t]he District shall not accept any gift that would violate or conflict with policies of or actions by the Board or with federal or state law. Before the Superintendent accepts a gift or recommends acceptance of a gift to the Board, as applicable, the Superintendent shall consider whether the gift: [h]as a purpose consistent with the District's educational philosophy, goals, and objectives…" In short, the District knows it cannot exercise absolute control over independent parent organizations, and even has enacted policies that exemplify this dichotomy. Nevertheless, Defendants knowingly and intentionally, and under color of state law (including Section 26.001(e)), attempt to commandeer and control private property and private parties.

---

[3] Available at: https://docs.google.com/document/d/1y1Bf7yAYFmF5lCK3_ANiJf6jRItZ0bAj/edit?usp%3Dsharing%26ouid%3D104243137988081048055%26rtpof%3Dtrue%26sd%3Dtrue&sa=D&source=editors&ust=1779836131101018&usg=AOvVaw1eQtk7kiCACnPJVuuu23Kz (at the very bottom of the document).

[4] Available at: https://docs.google.com/forms/d/e/1FAIpQLSeVmkZKeica-qUYDE5NjXZoBXIkFddq5HBxwGjcqdBuozCiGQ/viewform (on the second webpage of the digital form)

[5] Available at: https://pol.tasb.org/PolicyOnline/PolicyDetails?key=312&code=CDC#localTabContent.

40. At all times relevant hereto, Jasper High School had a parent-teacher association, and multiple other booster clubs, and ostensibly, Plano ISD had already met its obligation to establish at least one parent-teacher organization at Jasper. And Section 26.001(e) only requires a school board to *cooperate* in the establishment and operation of a parent-teacher organization. Section 26.001(e) confers no rights or authority upon a school district to enact its own regulatory scheme of independent, non-profit organizations. But, lack of authority rarely stops Plano ISD, and it didn't here, either.

41. Surely, while Plano ISD may regulate what fundraising activities occur on its property, choose not to provide staff or other resources to support an organization, regulate use of its property, regulate what donations it accepts and how those donations are used, it has no authority to demand private parties or organizations further its objectives, expend monies on its behalf, submit to the absolute control of government employees, or use Section 26.001(e) as weapon to infringe on the First Amendment rights of citizens and organizations. The arrogance of Plano ISD's policy is beyond the pale and matched only by its hubris.

### *Things Sour Between Plano ISD and the Booster Club*

42. After assuming the helm of the Booster Club, Cervantes raised several concerns regarding discrepancies between what Plano ISD advised or insisted on from booster clubs as opposed to what their actual legal obligations were. Plano ISD laid out all sorts of demands, restrictions, and regulations, often citing or claiming their authority citing non-existent Texas law or regulations of the Texas secretary of state.

43. On February 7, 2020, Plaintiffs met with Lee and Isensee to share their concerns. Lee and Isensee assured them corrections would be made.

---

44. Then Covid-19 hit weeks later. And, because school was essentially cancelled for the remainder of the year, the Booster Club decided to prorate annual membership dues and make refunds to parents for events and activities that would no longer take place.

45. Cervantes was re-elected as president of the Booster Club for the 2020-2021 school year, and re-elected again for the 2021-2022 school year.

46. All the while, Plano ISD never updated its policies, training, advising, or website concerning booster clubs as promised by Lee and Isensee in early 2020.

47. Once the 2021-2022 school year began, Plano ISD school administrators, including Lee and then-assistant-principal Linsay Radford, began demanding Plaintiffs provide all types of information that was not required by the bogus and unenforceable Board Policy GE, and information to which they had no right as a matter of law. Plaintiff's refused and repeatedly confirmed the information in the then-existing Policy GE had been provided (even though there was no legal obligation to comply).

48. Then, on February 9, 2022, Lee sent a letter to Plaintiffs, specifically invoked Policy GE, and claimed three documents had not been provided:

    a. A copy of the bylaws (signed by the president);[6]

    b. A more detailed fundraising calendar beyond "yet to be determined";[7] and

    c. Evidence of an audit from the prior year;[8]

---

[6] No law or policy requires bylaws to be signed by the current president, and many bylaws in many organizations go unchanged even though there is a change in leadership.

[7] No law or policy requires private organizations to engage in fundraising activities to the satisfaction of government employees.

[8] At the time, Policy GE did not have such a requirement, and there was no authority under the law or in any policy that gave a government employee authority to make such a demand.

---

If the demands weren't met by March 4, 2026, and apparently under the impression she was in a *Mission Impossible* movie, Lee threatened "disavowment of the [Booster Club]." Lee further demanded that, if the organization decided to cease operations, that monies it rightfully owned be "remitted to the district..." March 4th came and went, and Lee didn't get her way.

49. On March 15, 2022, Patel met with Cervantes, exasperated and almost crying because she said she was afraid she "was going to lose her booster club" if they didn't comply with the school administration's request. Patel expressed fear that even meeting with Cervantes could cause her to lose her job. Cervantes calmly went through Policy GE and demonstrated the Booster Club had provided each item listed therein to which Patel concurred, and it appeared she was assuaged.

50. The next day, on March 16, 2022, Patel called Cervantes and indicated she had spoken with school administrators who agreed the Booster Club was in compliance with Policy GE, and Patel expressed frustration that the district continued the ordeal when the Booster Club had been in compliance all along.

51. On March 21, 2022, Patel emailed Plaintiffs and requested that the Booster Club pay for needed repairs to the Jasper auditorium stage lighting. Patel stated that she and the Jasper theater teacher Robin Moss believed this was "the districts (sic) responsibility to fix" and expressed concern that district maintenance staff were not adequately trained. Because multiple school groups used the stage, and because the repairs had been earmarked in an upcoming bond election, and for whatever reasons under the sun they may have had, Plaintiff's declined to pay for the stage repairs.

52. On March 30, 2022, Lee – furious her March 4th deadline had been ignored (and even though, after speaking with Patel, Plaintiffs assumed everything was resolved), and incensed by the Plaintiffs' refusal to pay for repairs to public property that had already been allocated in an upcoming bond election – sent a second letter. The letter was dramatically entitled "DISAVOWMENT EFFECTIVE IMMEDIATELY."[9] The letter claimed the Booster Club would cease to be recognized, and again reiterated the non-existent requirements that violated unidentified UIL requirements requiring financial records being on file with the school, the lack of an audit, and added a new claim that the bylaws did not provide for the disposal of funds. Lee demanded that Plaintiffs remit their property and funds to her within two days and threatened to notify parents of choir students "that payments are being utilized in a manner not consistent with the intent on collection of the funds and those individuals will have the ability to pursue reimbursement or other appropriate action under the law." Though clearly thinking she was in charge of a private organization, Lee went on to remind Plaintiff's "it is also the responsibility of the booster officers to dissolve this organization, as appropriate, with the IRS." Lee essentially threatened private citizens and a private organization that if they didn't turn over their own property and money to the government, a government employee would notify other individuals (many of whom had never donated to the nonprofit), as well as private donors of financial malfeasance, a crime. April 1st came and went, and Lee still didn't get her way.

---

[9] It was unclear to Plaintiffs if, like in the movie, the message would self-destruct after it was read, so they kept a copy, just in case.

---

53. So, on April 5, 2022, Lee made good on her threats and sent a letter to choir parents and students, claiming the Booster Club was no longer recognized due to "non-compliance with UIL guidelines,[10] Plano ISD board policy, and Plano ISD procedures."[11] Lee informed her now-scared audience, the "booster club has been advised to remit all remaining funds to the district and dissolve the organization… with the IRS." Lee explained she made this benevolent decision "with careful consideration and in the best interest of our students, families, and staff to ensure an organization that impacts our students operates with fidelity."

*The Grievance Process Lags as Plano ISD Colludes to Take Over the Booster Club*

54. Plaintiffs immediately initiated Plano ISD's administrative grievance process. The administrative grievance is an opportunity for progressively more senior school district officials to delay resolution of dispute, hoping for mootness, and to pat each other on the back for the flawless work of their colleagues.  It is, for all intents and purposes, a sham. And, though it took some 10 months to go through it, Plaintiff exhausted her administrative remedies.

55. During the administrative process, Plano ISD failed to timely respond at different levels, improperly delayed progression by claiming untimeliness (only to later reverse their decision since they had bought more time to carry out their plan), and

---

[10] The University Interscholastic League (UIL) is a quasi-governmental body administratively operated by the University of Texas. It's tasked with regulating interscholastic competitions in the area of athletics, academic competitions, and musical competitions. Its booster club guidelines are not compulsory and are only provided "to assist schools and parents with determining the proper role for local booster clubs to play as they support the students who participate in UIL sponsored contests and activities. What's more none of the guidelines were violated by Plaintiffs. *See* https://www.uiltexas.org/policy/guidelines-for-booster-clubs.

[11] It's still unclear what "procedures" Lee was referencing.

then leveraged the process to try to coerce a resolution by Plaintiffs to legitimize their behaviors. Plaintiffs weren't taking the bait.

56. But, while Plano ISD was dragging its feet during the grievance, it was hard at work behind the scenes putting its plan to take over the Booster Club into action.

57. Behind the scenes Lee, her assistant principals, Patel, Satz, Morgan, Jennings, Isensee, and/or Freeman began colluding to divert Plaintiffs' mail. Normally, this would seem absurd, but because of the nature of the Booster Club (like nearly all other booster clubs and PTAs) had its mail (including bank statements) sent to the school, where school staff would sort it, hold on to it, and then deliver it to the Booster Club. In early 2022 Plaintiffs noticed that Lee, her assistant principals, and/or Patel were *not* delivering or forwarding the mail to the Booster Club. Plaintiff noted this in the Level 1 grievance hearing, which was ignored. Instead, Defendants continued to divert the Booster Club's mail, kept it, opened it, and used its contents (namely bank statements) to have their attorney, Mari McGowan, begin contacting vendors and others whose names appeared on the Booster Club's bank statements.

58. Around July 6, 2022, finding it troubling they were no longer receiving mail, Plaintiffs went to Prosperity Bank to change the address to which monthly statements were sent. They conferred with branch manager, Sheeba Eapen, to ensure no electronic funds transfers were affected while the dispute was ongoing.

59. A month later, while languishing at the Level 2 stage of the grievance process, Plaintiff began receiving calls from various payees and vendors that attorney Mari McGowan had been contacting them, representing Plano ISD. Ms. McGowan was reportedly asking third parties to convince Plaintiffs to abandon their grievance. Based on the

particular payees who were calling, and when they were paid, Plaintiffs were able to deduce that it was likely Lee had opened the Booster Club's mailed banks statements[12] and forwarded them to their lawyer, Mari McGowan,[13] who then identified payees on check images from the Booster Club's bank statements, and contacted them in an attempt to quash Plaintiffs' grievance. Plaintiffs would not relent, and continued to petition her government for the redress of her grievances – an act for which Defendants would make sure she paid dearly.

60. On September 23, 2022, the Level 2 decision was released. On September 25, 2022, Plaintiffs received information that Patel had sent an email to choir students and parents (but not to the actual officers of the Booster Club), that a meeting would be held on September 26, 2022, to discuss forming a new booster club. But, when folks arrived, Defendants enacted a plan to take over the Booster Club – a private organization with active officers, and over which Plano ISD had no control.

61. On September 27, 2022, Cervantes spoke with Carol, who explained the night prior, Lee, assistant principal Andrea Hendrickson, Patel, assistant choir director Cody Alarcon, Jennings, and Morgan hosted a meeting – purportedly of the Booster Club – and conducted a purported election of new officers.

Carol claimed she had been elected as the new treasurer of the Booster Club, Ludig had been elected president, and Hoh the secretary. Carol directed Plaintiffs to go to the bank so they could be removed as signers on the Booster Club's bank account.

---

[12] Lee, or whomever opened the Booster's Club mail, committed the federal crime of obstruction of mail in violation of 18 U.S.C. § 1701.a

[13] Receipt of the stolen/obstructed mail is also a federal crime pursuant to 18 U.S.C. § 1708.

Carol also acknowledged that the Booster Club's opened mail was presented to them by Plano ISD staff during the meeting. Cervantes told Carol the Booster Club had sanctioned no such meeting, and whatever Plano ISD was up to was improper. Cervantes alerted Prosperity Bank about possible fraudulent activity.

62. On or about September 28, 2022, Ludwig, Carol, and Hoh, accompanied by Plano ISD fine arts director Morgan, went to Prosperity bank where they presented supposed minutes from the illegal meeting, documents suggesting they had been elected as the new officers of the Booster Club, and the last copy of the Booster Club's bylaws that Plaintiffs have provided Lee to be in compliance with Policy GE. Working in concert and conspiring together, Ludwig, Carol, Hoh, and Morgan convinced Prosperity Bank to remove Plaintiffs as authorized signers of the Booster Club's bank account, and replace them with Ludwig, Carol, and Hoh. Said Defendants acted with the intent to deprive Plaintiffs' of their lawful property. These Defendants' conduct likely constituted the crime of forgery under Tex. Pen. Code § 32.21, because they intentionally presented documents intended to defraud the bank and harm the Booster Club by taking over its funds.

63. The minutes presented by Defendants contained the notarial seal and signature of Satz, who conveniently also served as the office manager of Jasper High School. At all times, Satz was acting under color of state law to the extent she was: a) performing acts as a notary public pursuant to Chapter 406, Tex. Gov't. Code, and/or b) was acting as an employee of Plano ISD.

64. A notary public may not affix or attach the notary public's seal to any document except to authenticate the notary public's official act. Tex. Gov't Code § 406.013(e)(2). Satz's

notarization does not appear to contain a notarial certificate or constitute the administration of an oath, taking of an acknowledgement, or the official performance of any authority granted to her by Tex. Gov't. Code § 406.016, and it is highly unusual that corporate or organization minutes be notarized, anyway. Instead, Satz affixed her notary seal to make the minutes and actions of Defendants appear more legitimate, when they took the notes the next day to Prosperity Bank to fraudulently gain control of the Booster Club's bank account and its property.

65. Plaintiffs have also become aware Defendants' working together and in concert with each other, conspired and endeavored to take over the Booster Club's website, bookkeeping services, insurance, and tax preparation accounts. Plaintiffs also sent them a cease and desist letter from a lawyer they hired to assist. It was ignored.

66. Eventually, on March 3, 2023, Plaintiffs met with Ludig and Carol (Hoh refused to attend) and explained the totality of what transpired. On March 13, 2023, Ludwig and Carol had agreed to appear at Prosperity Bank and set things right. Just hours before the meeting, they decided not to appear after all.

### Plano ISD Tries to Legitimatize Its Wrongs & Extort Plaintiff

67. Having bogged down the grievance process long enough to execute their *coup d'état*, the grievance process moved to Level 3, with Freeman acting as the hearing officer. In her Level 3 decision on November 10, 2022, Ms. Freeman batted down each complaint, and then discussed the illegal takeover of the Booster Club by Defendants, even though Plaintiffs had not formally lodged that issue at the Level 3 conference.

68. Freeman was confident enough to be less obscure in Plano ISD's wishes. In her "decision" she made the following offer:

"In exchange for you ceding control of the Choir Booster Club to the newly elected officers, as well as access to the currently frozen money (on deposit at Prosperity Bank), the District will send a letter indicating the issue has been resolved, the money has not been misappropriated, and thank you for your service and cooperating in working through this difficult process."

Freeman's "decision" is more of a negotiation than an adjudication of a grievance. In no uncertain terms, Freeman demanded Plaintiffs' legitimize the unlawful takeover of the Booster Club by Defendants, and dangles the promise that they will correct Lee's false and misleading email blast intended to destroy Plaintiffs' reputation. In short: let us walk away with your property and money, and we will give you your name and reputation back. The notion is astounding that government employees, acting only on a single state statute that requires school districts to "cooperate in the establishment" of parent organization, are empowered to make such demands, engage in such negotiations, or exact such revenge in the event of noncompliance.

69. Plaintiffs raised their final administrative appeal to the Plano ISD school board. On February 16, 2023 – nearly a year later, Plano ISD then-school board president, David Stolle, reiterated Freeman's offer in her Level 3 response, and that was the exhaustion of the administrative process with Plano ISD.

70. Plaintiffs have never been accused of or proven to have misappropriated any monies related to the Booster Club. Defendants' pressure campaign was an attempt to legitimize their own unlawful conduct in exchange for retracting a lie they made up – and which they knew had no merit.

71. Notably, just a week before Freeman released her Level 3 response, Patel posted on her Plano ISD webpage a quote from Ludwig, which claimed, "the prior booster club officers… are unwilling to transition the booster club nor relinquish the bank account

funds," and encouraged the formation of a new booster club. This constituted a tacit acknowledgment that Defendants knew they had hijacked a private organization to steal its money, and when it didn't go as planned, they decided creation of a new organization was appropriate.[14]

*The Criminal Prosecution of Plaintiffs*

72. Plaintiffs met with Plano Police Department detectives Vidmar and Kailbourne in October 2022 regarding Defendants' efforts to take over their organization and steal their property. At first, the detectives were very interested and explained they would look into the matter, stated they believed Plaintiffs had sufficient evidence that a crime had been committed, and had an officer take a formal statement and issued an incident number. They stated they would look into the matter further.

73. Later, Detective Kailbourne informed Cervantes he concluded this was merely a civil matter, and they would not accept the case. Plaintiff then engages other law enforcement agencies, including the Collin County Sheriff's Financial Crimes Investigator Matthew Polk, without ultimate success.

74. Plaintiffs also engaged other elected officials, advocacy groups, and spoke out publicly about what happened. Cerventes was repeatedly encouraged to run for school board and considered running for Plano ISD's school board – a proposition Plano ISD learned about and had to make sure didn't happen.

---

[14] One month after Plano ISD's Level 4 decision, Ludwig incorporated JHSCBC, and listed herself and Carol as directors. Interestingly, the registered agent is "Jasper High School." Jasper High School is not "registered or authorized to do business in this state" and is not even eligible to serve as a registered agent. *See* Tex. Bus. Orgs. Code § 5.201(b)(2)(B)(i). But this proves Defendants acted in concert with one another and knew they had illegally commandeered an independent organization necessitating the formation of a new entity – once it became clear Plaintiffs would not make a proverbial deal with the devil.

75. In May 2023, after additional attempts by Defendants to gain control of the Booster Club's bank account with Prosperity Bank, the bank informed Plaintiffs it would be closing the account. Plaintiffs were informed that a check would be issued in the name of the entity which opened the account, and they could pick up the check. Plaintiffs went to Prosperity Bank and picked up the check on May 16, 2023.

76. The next day, on May 17, 2023, Plaintiffs took the check to Vantage Bank, and opened a new account, in the organization's name, and deposited the funds. The entirety of the funds was deposited; that is, no funds were withdrawn or retained by Cervantes in an effort to ensure every dollar was accounted for. In short, *every* single action taken by Cervantes regarding the Booster Club and its funds was legitimate, legal, in conformity with the law and the purpose of the organization.

77. On August 5, 2024, Plaintiffs' insurance company informed Plaintiff's that their check had bounced. Plaintiffs eventually learned of a supposed order freezing the bank account, and subsequently ordered the account sized by the Plano Police Department.

78. The next day, Plaintiffs received communications from Plano Police Department Jerry Minton, identifying himself as a forgery detective, and stating he was investigating the Booster Club and its officers.[15] While Cervantes began working to retain defense counsel, one of the attorneys she interviewed reached out to Minton to offer to a meeting with Cervantes to explain the facts of the case and see if there was a way for

---

[15] Coincidentally, Minton was featured in a *Dallas Morning News* article in the months prior to his investigation involving this case, wherein Detective Minton was on campus at McMillen High School in Plano ISD. At the time, the principal at McMillen High School was Todd Williams, the husband of Plano ISD superintendent Theresa Williams. It's unclear why Minton took the lead on a case that had already been reported to two other detectives, who concluded the matter was civil in nature.

whoever thought they were owed money to be paid to resolve the dispute. Minton indicated he needed to "make a call," then called back, indicating he had spoken with Isensee, who described stated Isensee wanted "full charges pressed" because Cervantes is "entitled, intimidating, who attends school board meetings and intends to run for school board (in 2025)." Minton declared nothing Cervantes could say or do would keep him from arresting them. Minton never bothered to meet with Cervantes or any other officers of the Booster Clubs to hear their side of the events which transpired.

79. Ultimately, on August 22, 2024, Detective Minton executed a probable cause affidavit – based entirely off the knowingly false statements of each Defendant[16] – and obtained a warrant to arrest Cervantes and other Booster Club officers for the felony offense of theft over $2,500 but less than $30,000.

80. Based on the false statements by Defendants, and their retaliatory efforts to punish Plaintiffs for not ceding to their demands, Cervantes was subsequently arrested, booked into the Collin County Jail, where she was fingerprinted, swabbed for DNA, photographed, and held for 22 hours.

81. There was absolutely no probable cause to arrest Cervantes. Defendants *knew* they couldn't take over the Booster Club lawfully (that's why they eventually incorporated a new entity), at all times Cervantes was the duly elected president and a director of

---

[16] The affidavit was largely based on the legal opinions and statements of Isensee, who had not appeared to be a major player in the events until then. In reality, it appears Isensee was using her official role as the auditor of Plano ISD to make all manner of legal determinations, conclusions, and recommendations regarding the Booster Club, the newly formed JHSCBC, and the supposed obligations and legalities of Plaintiffs '' actions. In short, it appears Detective Minton allowed Isensee to do a lot of his job and relied solely upon representations by Plano ISD, its employees, and Ludig that Policy GE had any legal effect. Defendants convinced Minton a crime had been committed, when one had not – not to mention neither Plano ISD, Ludwig, or JHSCBC had a cognizable right or claim to the monies held by the Booster Club.

the Booster Club, she properly endorsed a check made payable to the Booster Club, and properly deposited into another financial institution in the Booster Club's name. Nothing she did could remotely constitute a crime. It took all of the Defendants' maliciously false statements, lies, and extortion to eventually obtain an arrest warrant as the ultimate punishment and to silence Plaintiffs.

82. After posting bond, Cervantes's mugshot was shared publicly, distributed by one or more Defendants, and Defendants began claiming victory, as if the arrest justified and legitimized their lies.

83. Plaintiff had to post a bond and hire legal counsel to defend her against the baseless criminal charges, costing thousands of dollars. But eventually, a grand jury in Collin County, Texas, issued a no-bill, and declined to indict Cervantes for any crime for want of probable cause, and the prosecution was terminated in Cervantes's favor.

84. Nevertheless, Defendants continued their charade to obtain ultimate control. Isensee, Morgan, Luwig, and Patel appeared and testified at the property hearing and continued to lie about Plaintiffs and the effects of Policy and the power it (doesn't) confer on Plano ISD. Ultimately, the seized funds were awarded to Plano ISD, depriving Plaintiffs of them forever.

85. Plano ISD has since dedicated a webpage to the issue where it posts a copy of the order adjudicating the funds, claiming a win for students and announcing the new 2025 Policy GE, describing them as "... designed to ensure that parent groups operate independently, while still aligning with district philosophy, legal requirements and

the best interests of Plano ISD students."[17] Plano ISD includes a link to the order awarding the Booster Club's funds to Plano ISD. Plano ISD conveniently omits the fact that the arrested parents were no-billed and charges against them were dismissed

86. Upon information and belief, JHSCBC ultimately received the funds rightfully owed by the Booster Club, where they continued to benefit from the stolen and wrongfully acquired property of others.

### Harm & Damages to Plaintiffs

87. Cervantes has been harmed as follows:

    a. Her reputation has been harmed. Her mugshot was shared publicly (including by Defendants, and several news stories featured the allegations (without the benefit of the same news coverage for the dismissal of the charges). Cervantes's reputation has been harmed and the harm will likely continue.

    b. There has been harm to her future opportunities. Cervantes's arrest is a matter of public record. She has already had difficulty applying for a job, and if she were to ever apply for a job in the future (which is increasingly likely given the current economic conditions) or for public benefits, or actually seeks public office, her chances of succeeding would be significantly diminished due to her criminal record;

    c. She has been financially harmed. Cervantes had to pay a fee to be released from jail, a bondsman to secure her bond, and tens of thousands of dollars to lawyers to defend against the baseless criminal charges;

---

[17] Available at: https://www.pisd.edu/p/~board/1-media-topics/post/booster-club-legal-matter.

d.  The harm to her faith in the criminal justice system. Defendants' actions caused Cervantes to lose faith in the criminal justice system and law enforcement in Plano, a place where she lives with her family. She went to multiple law enforcement agencies (including the one that ultimately arrested her), and all of them told them it was a civil matter. It wasn't until Plano ISD and its employees, in concert with the other Defendants, throwing their weight around with special connections and influence, were able to tip the scales of justice against Cervantes and cause her arrest.

e.  Harm to her physical health. Stress brought on by the worry about her criminal prosecution led to many sleepless nights as well as anxiety-filled days, resulting in the overall deterioration of Cervantes's health.

88.  The Booster Club has been harmed as follows:

a.  Harm to its property. Because of Defendants the Booster Club's property and money was seized without probable cause, and it has been deprived of its property;

b.  Harm to its existence. Because of Plano ISD and its employees, acting in concert with the other Defendants and without regard to its constitutional rights, had its ability to exist impaired and effectively destroyed by a completely unlawful and void-on-its-face Policy GE, that gives a school district absolutely no authority to dissolve a private entity, reorganized it, remove officers, or affect its registration with the IRS or state.

## VI.    CLAIMS & CAUSES OF ACTION

89. Plaintiffs incorporate all facts alleged above, herein, and below, and sue for the following claims for relief and causes of action:

### COUNT #1 - 42 U.S.C. § 1983 (First Amendment – Freedom of Association)

90. Defendants, acting individually and jointly, and under color of state law, deprived Plaintiffs of rights secured by the First and Fourteenth Amendments to the United States Constitution, including the right to freely associate for expressive, civic, charitable, political, and organizational purposes.

91. The Booster Club constituted a private expressive and associational organization formed for charitable and educational purposes, including supporting the Jasper High School choir and allowing parents and citizens with shared interests and viewpoints to associate together in pursuit of common goals.

92. Plaintiffs engaged in constitutionally protected associational activity by organizing, operating, governing, funding, speaking through, and participating in the Booster Club independent of government control and independent of the viewpoints, objectives, and financial demands of Plano ISD and its employees.

93. Defendants intentionally interfered with Plaintiffs' protected associational rights by, among other acts:

   a. attempting to compel the Booster Club to conform to governmental viewpoints and objectives;

   b. demanding private organizational funds be surrendered to the government;

   c. threatening "disavowment" and dissolution of the organization;

   d. intimidating members and participants;

e.  interfering with organizational communications and mail;

f.  orchestrating an illegitimate and unlawful takeover of the organization;

g.  attempting to replace duly elected officers;

h.  fraudulently effectuated the change of the authorized signers of the Booster Club's bank account;

i.  causing the freezing and seizing organizational funds;  and

j.  and causing retaliatory criminal charges to be pursued against Plaintiffs.

94. Defendants' actions were intended to chill, punish, suppress, and interfere with Plaintiffs' continued participation in protected expressive association and to compel Plaintiffs to either surrender control of the organization and its property or face retaliation by governmental officials.

95. Defendants acted intentionally, maliciously, and with deliberate indifference to Plaintiffs' clearly established constitutional rights.

96. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered deprivation of constitutional rights, and the harms described above, resulting in damages recoverable under 42 U.S.C. § 1983.

## COUNT #2 - 42 U.S.C. § 1983 (First Amendment – Right to Petition Government)

97. The First Amendment protects the right of citizens to petition governmental entities for redress of grievances, including through administrative grievance procedures, complaints to governmental agencies, communications with elected officials, public advocacy, and pursuit of legal remedies.

98. Plaintiffs engaged in protected petitioning activity by filing and pursuing grievances through Plano ISD's administrative grievance process, communicating with public

officials and law enforcement, publicly criticizing Defendants' conduct, speaking at public school board meetings, and pursuing legal and administrative relief.

99. Defendants retaliated against Plaintiffs for engaging in protected petitioning activity and intentionally interfered with Plaintiffs' exercise of those rights.

100.     Defendants used the grievance process itself as a tool of intimidation, coercion, delay, retaliation, and leverage against Plaintiffs, including by:

   a) delaying grievance proceedings to give time to effect the takeover;

   b) diverting and opening the Booster Club's mail and using the information contained in the mail to coerce Plaintiffs;

   c) attempting to coerce Plaintiffs into relinquishing organizational property and rights;

   d) contacting vendors and third parties to pressure Plaintiffs into abandoning their grievances and created discord with vendors and third parties;

   e) threatening reputational harm if proposed agreements were not accepted; and

   f) pursuing retaliatory law-enforcement action after Plaintiffs refused to capitulate.

101.     Defendants' conduct would chill a person of ordinary firmness from continuing to petition the government for redress of grievances.

102.     Defendants' actions were substantially motivated by retaliatory animus toward Plaintiffs' protected activity and constituted unlawful retaliation under the First Amendment.

103.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered damages as previously alleged.

## COUNT #3 - 42 U.S.C. § 1983 (First Amendment – Freedom of Speech)

104.    The First Amendment protects the right to speak freely, to criticize governmental officials and Plano ISD policies regarding booster clubs, and to refrain from compelled speech, compelled support, or compelled subsidization of governmental viewpoints and objectives, including compelled expenditures to repair the Jasper High School stage, especially when monies had already been approved in a bond package or otherwise allocated in Plano ISD's annual maintenance budget.

105.    Plaintiffs engaged in protected speech by questioning and criticizing Plano ISD policies and practices, disputing Defendants' asserted authority over private organizations, refusing to surrender private organizational property, refusing to expend private organizational funds for governmental purposes, and publicly speaking about Defendants' conduct.

106.    Defendants retaliated against Plaintiffs because of Plaintiffs' speech and viewpoints and attempted to compel Plaintiffs and the Booster Club to:

a) further governmental objectives;

b) financially support governmental expenditures;

c) conform to Plano ISD viewpoints and policies; and

d) relinquish organizational autonomy and property to governmental actors.

107.    Defendants further attempted to compel Plaintiffs to subsidize public-school expenditures and improvements, including demands that Plaintiffs use private charitable funds to pay for repairs and expenditures Defendants themselves acknowledged were governmental responsibilities.

108.    Defendants' actions constituted viewpoint discrimination, retaliation against protected speech, and unconstitutional attempts to compel speech, association, and financial support contrary to Plaintiffs' beliefs and decisions.

109.    Defendants' conduct violated clearly established constitutional rights of which a reasonable governmental official would have known, for which Plaintiffs suffered damages as described above, and which are recoverable under 42 U.S.C. § 1983.

**COUNT #4 - 42 U.S.C. § 1983 (Fourth Amendment – Unreasonable Seizure of Property)**

*Brought by the Booster Club Only*

110.    The Fourth Amendment protects against unreasonable seizures of property. The Booster Club possessed lawful ownership, possessory, and property interests in the Booster Club's funds, bank accounts, mail, records, and organizational property.

111.    Defendants, acting jointly and under color of state law, intentionally interfered with Plaintiffs' possessory interests in such property by:

   a) diverting and opening the Booster Club's mail;

   b) interfering with bank accounts and attempting to interfere with relationships with vendors and third parties with whom the Booster Club did business and was associated;

   c) freezing and restricting access to funds;

   d) causing the removal of Plaintiffs as account signatories;

   e) causing seizure of organizational funds;

   f) and depriving Plaintiffs and the Booster Club of access to and control over their property.

112.    Defendants lacked lawful authority to seize, control, transfer, or direct disposition of the Booster Club's property and funds.

113.    The seizures complained of herein were unreasonable because they were undertaken without lawful justification, without probable cause, without constitutionally adequate procedures, and in retaliation for Plaintiffs' exercise of protected constitutional rights. Further, they were wholly based on the false premise that Policy GE (in any of its forms), or Section 26.001(e)provides any basis for school district employees to dissolve or otherwise control independent charitable organizations – especially on the grounds that they don't share the district's views.

114.    Defendants knowingly made false, misleading, incomplete, and materially inaccurate representations in order to procure warrants, account freezes, seizures, and criminal enforcement actions, including Cervantes's arrest.

115.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the harms and damages described above, which are recoverable under 42 U.S.C. § 1983.

## COUNT #5 - 42 U.S.C. § 1983 (Fourteenth Amendment – Procedural Due Process)

116.    Plaintiffs possessed protected liberty and property interests in the Booster Club, its funds, organizational governance, bank accounts, mail, reputation, and continued enjoyment and control of their property and their freedom.

117.    Defendants deprived Plaintiffs of those protected interests under color of state law without constitutionally adequate due process of law.

118.    Defendants deprived Plaintiffs of property and liberty interests without adequate notice, meaningful hearing, neutral adjudication, or lawful authority by:

    a)  orchestrating the backdoor takeover of the Booster Club;

    b)  interfering with organizational governance by elected false officers;

    c)  removing or attempting to remove Plaintiffs from its bank account;

d) causing the freezing and seizure funds;

e) diverting and opening the Booster Club's mail;

f) damaging Plaintiffs' reputation by sending false letters, emails, and making false statement on Patel's school webpage, and the Plano ISD website;

g) Using the grievance process not to grant or deny redress, but as a negotiation and coercion tool to ratify Defendants' illegal acts; and

h) initiating criminal proceedings based on knowingly false or misleading information.

119.	The grievance process afforded by Plano ISD was not meaningful and was instead used as a mechanism to delay relief, pressure Plaintiffs to surrender their rights and property, and ratify unconstitutional conduct already undertaken by Defendants.

120.	Defendants' conduct shocked the conscience, constituted arbitrary governmental action, and violated clearly established due process protections guaranteed by the Fourteenth Amendment, causing the damages described above, which are recoverable under 42 U.S.C. § 1983.

## COUNT #6 - 42 U.S.C. § 1983 (Fourteenth Amendment – Equal Protection)

121.	The Equal Protection Clause of the Fourteenth Amendment prohibits governmental actors from selectively targeting individuals for adverse treatment without a rational basis and from retaliatory selective enforcement based upon protected activity, viewpoints, or associations.

122.	Defendants intentionally treated Plaintiffs differently from similarly situated booster clubs, organizations, and individuals.

123.     Upon information and belief, other similarly situated booster organizations who did or did not comply with Plano ISD's patently unlawful Policy GE, were not subjected to:

a) threats of unlawful and baseless governmental dissolution;

b) coercive demands to surrender funds to the government;

c) opening and diverting of mail;

d) retaliatory criminal investigations resulting in false arrest;

e) groundless seizure of bank accounts; and/or

f) coordinated governmental efforts to replace organizational leadership.

124.     Defendants selectively targeted Plaintiffs because Plaintiffs challenged Defendants' authority, refused to comply with unlawful demands, exercised protected constitutional rights, criticized governmental conduct, pursued grievances, and publicly opposed Defendants' actions.

125.     The disparate treatment lacked any rational basis and was motivated by retaliatory animus and improper governmental objectives.

126.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the damages previously alleged, which are recoverable under 42 U.S.C. § 1983.

## COUNT #7 - 42 U.S.C. § 1983 (First & Fourth Amendments – Retaliatory/False Arrest)

### *Asserted by Cervantes Only*

127.     Defendants intentionally caused, procured, encouraged, directed, and/or substantially participated in the criminal investigation, arrest, and prosecution of Cervantes in retaliation for her protected speech, associations, criticisms of Plano ISD, participation in grievance proceedings, public advocacy at school board meetings,

refusal to surrender the Booster Club and its property, and intention to run for a place on the Plano ISD school board.

128.    Defendants knowingly supplied false, misleading, incomplete, and materially inaccurate information to law enforcement officers, investigators, prosecutors, and/or magistrates in order to procure criminal charges and an arrest warrant against Cervantes.

129.    Defendants omitted material exculpatory information and falsely represented Plaintiffs' lawful exercise of control over Booster Club funds and property as criminal conduct.

130.    No reasonable governmental official could have believed probable cause existed to arrest Plaintiff where:

   a) Plaintiff was an authorized officer and director of the Booster Club;

   b) the funds belonged to the Booster Club;

   c) the funds were transferred between accounts held in the organization's name;

   d) all funds remained accounted for;

   e) and Defendants themselves later acknowledged the need to create a separate organization; and

   f) Policy GE had no legal affect to authorize Plano ISD to dissolve a private charitable organization, direct the distribution of its funds, or create criminal liability for failure to comply with Policy GE.

131.    Defendants' actions were substantially motivated by retaliatory animus toward Plaintiffs' exercise of clearly established constitutional rights.

132.     The arrest, prosecution, seizure of property, and related criminal proceedings would chill a person of ordinary firmness from continuing to engage in protected speech, petitioning activity, and association.

133.     As a direct and proximate result of Defendants' conduct, Cervantes suffered unlawful arrest, detention, humiliation, reputational injury, emotional distress, financial damages, attorney's fees, and deprivation of constitutional rights.

## COUNT # 8 - 42 U.S.C. § 1983  (Civil Conspiracy & Liability of Ludwig, Carol, & Hoh)

134.     Even though they were not employed by Plano ISD, Defendants Ludwig, Carol, and Hoh acted jointly and in concert under color of state law with Plano ISD and its employee Defendants to accomplish unlawful objectives, including:

    a) suppressing Plaintiffs' protected speech and associations;

    b) interfering with Plaintiffs' grievance activities;

    c) taking control of the Booster Club and its assets;

    d) retaliating against Plaintiffs;

    e) and causing Plaintiff's unlawful arrest and prosecution.

135.     Defendants reached an understanding or meeting of the minds with Plano ISD and its employees to commit the unconstitutional acts alleged herein.

136.     In furtherance of the conspiracy, Defendants committed overt acts including coordinating meetings, running in fraudulent elections and fraudulently assuming office, presenting documents to banking instructions to take over the Booster Club's accounts, providing false information to law enforcement, pursuing retaliatory criminal charges, and providing false testimony to the detriment of Plaintiffs.

137.     As a direct and proximate result of the conspiracy, Plaintiffs suffered the damages previously alleged, which are recoverable under 42 U.S.C. § 1983.

**COUNT # 9 – Appropriation of Name and Likeness (as to JHSCBC)**

*Brought by The Booster Club Only*

138.     The Booster Club sues JHSCBC for appropriation of its name and likeness. JHSCBC essentially bills itself as the success to the Booster Club, and in all respects holds itself out as the same entity with the same purpose. The only difference between the two entities' names is the Booster Club includes the word "High School" and JHSCBC simply uses "HS" to abbreviate "High School."[18] The Booster Club can be readily identified, and JHSCBC has held itself out as the Booster Club to parents, students, and the community. JHSCBC has received some advantage or benefit from its appropriation – including, with the aid of Plano ISD – being the beneficiary of donations and volunteers who are unable to distinguish it from the Booster Club. And, as a result of the appropriation by JHSCBC, the Booster Clube has suffered damages.

**COUNT # 10 – Malicious Criminal Prosecution (as to Ludwig)**

*Brought by Cervantes Only*

139.     Cervantes sues Ludwig for malicious criminal prosecution. A criminal prosecution was commenced against Cervantes. Ludwig, along with Plano ISD personnel, initiated and/or procured the prosecution, and caused the arrest of Cervantes. Cervantes was innocent of the charge, and the prosecution was terminated when a Collin County no-billed and declined to indict Cervantes. Ludwig did not have

---

[18] Interestingly, because of the length of the Booster Club's full legal name, they often received mail directed to "Jasper HS Choir Booster Club," which conveniently happens to be the name JHSCBC assumed when it was formed. Surely, this was no accident.

probable cause to initiate the prosecution, and did so with malice and punish Cervantes for not legitimizing Ludwig as president of the Booster Club and for lawfully accepting the check from Prosperity Bank, made payable to the Booster Club, and depositing it into a new bank in the name of the Booster Club, rather than giving those funds to JHSCBC. As a result of the prosecution, Plaintiff suffered damages as described above.

## COUNT #11 – Money Had and Received (as to JHSCBC)

### *Brought by the Booster Club Only*

140.    A cause of action for money had and received is not based on wrongdoing, but instead looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.

141.    The Booster Club sues JHSCBC for money had and received. Through its lies, misdeeds, and misrepresentations, whether malicious or not, it wrongfully acquired $4,437.39 in Booster Club funds, which under every principle of equity, ended up in the possession of or under the control of JHSCBC, but rightfully belong to the Booster Club, for which it now sues.

## VII.    REQUESTED RELIEF & PRAYER

WHEREFORE, Plaintiffs pray and request the Court render the following relief:

1) Declare PISD's Board Policy GE (in all its variations) unconstitutional and unenforceable;

2) Alternatively, declare specific portions of PISD's Board Policy GE unconstitutional and unenforceable, as the court may so find;

3) Declare that Plano ISD, nor any of its employees, has authority to dissolve, disband, or otherwise terminate an independent charitable organization or any other duly organization or entity formed under the law;

4) Declare that Plano ISD's Affidavit of Compliance & Understanding of Dissolution or Disavowed Status, and any iterations thereof, are unconstitutional and unenforceable;

5) Enjoin Plano ISD or its employees from:

   a. using Board Policy GE as a basis for dissolving or attempting to dissolve any independent organization, including independent booster clubs;

   b. using alleged non-compliance with the policy as a basis for any criminal complaint, demanding, coercing or attempting to coerce, or compelling or attempting to compel any independent organization, including independent booster clubs, to surrender or remit funds to Plano ISD;

   c. Diverting or opening the mail of Plaintiffs or any other independent booster club or parent organizations which may have mail delivered to Plano ISD or one of its campuses;

   d. Holding or attempting to hold, or conducting or attempting to conduct a meeting of an independent organization, including an independent booster club, parent-teacher association, or parent organization;

   e. Holding or attempting to hold, or conducting or attempting to conduct an election of officers of an independent organization, including an independent booster club;

   f. Serving as the registered agent for any independent organization, including any independent booster club;

6) Order Plano ISD to repeal or amend its Board Policy GE in a manner that does not violate the Constitution, subject to the approval of the court;

7) Award Plaintiffs damages in an amount to be determined at trial;

8) Award Plaintiffs costs and reasonable attorneys' fees per 42 U.S.C. § 1988; and

9) Grant other such relief as this Court deems just and appropriate.

*Signature on following page…*

Respectfully submitted,

**THE NICHOLS LAW FIRM, PLLC**

_____

JUSTIN P. NICHOLS
Texas Bar No.: 24081371
309 W. Dewey Pl., Ste. B201-540
San Antonio, Texas 78212
(210) 354-2300 phone
(800) 761-5782 facsimile
efile@thenicholslawfirm.com
**ATTORNEY FOR PLAINTIFFS**